UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUDY O.,[1]

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____

DECISION & ORDER

21-CV-1091MWP

**PRELIMINARY STATEMENT**

  Plaintiff Judy O. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income ("DIB/SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 10).

  Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 7, 8). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

3

      (4)      if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

      (5)      if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    Procedural History

      Plaintiff filed for DIB/SSI on August 10, 2015, alleging disability beginning on January 19, 2015. (Tr. 136, 156).[2] Those applications were denied by an ALJ on May 18, 2018 (the "2018 Decision"). (Tr. 22-34). On appeal, the Hon. Lawrence J. Vilardo, United States District Judge for the Western District of New York, issued a Decision and Order (the "District Court Decision") remanding the matter on the grounds that the 2018 Decision was not supported by substantial evidence, and a judgment remanding the action was issued on July 29, 2020. (Tr. 1143-55). In the District Court Decision, Judge Vilardo determined that the ALJ erred in rejecting the opinions of plaintiff's treating nurse practitioner Bridget Vaccaro, NP, and formulating an RFC based upon his own lay opinion. (*Id.*). Accordingly, Judge Vilardo

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

determined that remand was warranted in order to permit the ALJ to reconsider Vaccaro's opinion, including soliciting a new opinion from Vaccaro, if warranted. (*Id.*).

On August 24, 2020, the Appeals Council entered an order remanding the case to the ALJ and directing the ALJ to conduct further proceedings consistent with the District Court Decision. (Tr. 1158). On June 28, 2021, after further developing the record and conducting an additional hearing, including taking testimony from a medical expert, a different ALJ concluded that plaintiff was not disabled (the "2021 Decision"). (Tr. 998-1018). Plaintiff commenced this lawsuit on October 5, 2021. (Docket # 1).

### III. The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 19, 2015, the alleged onset date. (Tr. 998-1018). In reaching this conclusion, the ALJ noted that plaintiff engaged in work after the alleged onset date, but that the work did not rise to the level of substantial gainful activity. (*Id.*). At step two, the ALJ concluded that plaintiff had the following severe impairments: cervical degenerative disc disease, spondylosis, and fusion at C6-7; lumbar scoliosis; thoracic myelopathy; bilateral knee osteoarthritis; left shoulder degenerative joint disease and impingement syndrome with arthroscopic surgery with distal clavicle excision; obesity; diabetes mellitus; hypertension; and, major depressive disorder. (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

With respect to plaintiff's mental impairments, the ALJ considered the four broad categories of mental functioning. (*Id.*). Specifically, the ALJ determined that plaintiff had mild limitations in her ability to interact with others and moderate limitations in her ability to understand, remember, or apply information; concentrate, persist, or maintain pace; and, adapt or manage herself. (*Id.*). The ALJ concluded that plaintiff retained the RFC to engage in light work with certain limitations. (*Id.*). Specifically, plaintiff was able to lift, carry, push and pull up to twenty pounds occasionally and ten pounds frequently and could stand, sit and/or walk for up to six hours of an eight-hour workday, but she would need to alternate between sitting and standing every thirty minutes while remaining on task. (*Id.*). Plaintiff was able to frequently climb ramps or stairs and reach overhead with her left hand and occasionally balance, stoop, kneel, and crouch, but was unable to crawl or climb ladders, ropes, or scaffolds. (*Id.*). Additionally, plaintiff was limited to work environments with no excessive vibrations or exposure to hazards, such as unprotected heights or moving machinery. (*Id.*). The ALJ further concluded that plaintiff was limited to work that varies only occasionally with respect to duties, hours, or location and involves only simple work-related decisions and simple, routine tasks that can be learned after a short demonstration or within thirty days. (*Id.*). At steps four and five, the ALJ found that plaintiff was unable to perform her past relevant work, but that other jobs existed in significant numbers in the national economy that, based on her age, education, work experience, and RFC, plaintiff could perform, such as laundry folder, garment folder, and office helper. (*Id.*). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

IV.  **Plaintiff's Contentions**

        Plaintiff contends that the ALJ's determination that she was not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 7). First, plaintiff maintains that the physical portion of the ALJ's RFC determination is not supported by substantial evidence because the ALJ gave great weight to the testimony provided by John F. Kwock, MD, who testified during the administrative hearing, but failed to acknowledge Kwock's testimony that his expertise was limited to orthopedic surgery. (Docket # 7-1 at 20-22). In addition, plaintiff maintains that remand is warranted because a portion of Kwock's testimony was inaudible. (*Id.*). Next, plaintiff argues that the ALJ improperly rejected the only medical opinion in the record assessing her mental limitations, thus rendering the ALJ's mental RFC assessment unsupported by substantial evidence. (*Id.* at 23-24).

V.  **Analysis**

       An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Soc. Sec. Ruling 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL

7

1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

### A.  The ALJ's Physical RFC Assessment

Plaintiff contends that the ALJ improperly accorded great weight to Kwock's opinion without acknowledging Kwock's testimony that his expertise was limited to orthopedic surgery. (Docket # 7-1 at 20-22). In addition, plaintiff maintains that remand is warranted because a portion of Kwock's testimony was inaudible. (*Id.*). I disagree.

During the administrative hearing, Kwock testified that he had reviewed the administrative transcript and had identified medically determinable impairments in plaintiff's cervical and thoracic spine, left shoulder, and knees. (Tr. 1033-34, 1047-49). He also observed that plaintiff was markedly obese. (Tr. 1034). Based upon his review of plaintiff's medical records, Kwock opined that plaintiff was capable of performing the exertional requirements of light work, but that she was limited to frequent stooping, crouching, crawling, overhead reaching with the left hand, and climbing ramps and stairs, and occasional climbing of ladders, ropes, and scaffolds. (Tr. 1036-38, 1048-49).

When asked for an opinion regarding limitations caused by plaintiff's impairments of sleep apnea, anemia, and chronic fatigue, Kwock testified that he was a board-certified orthopedic surgeon and that he attempted to confine his testimony to the musculoskeletal system. (Tr. 1043-44). According to Kwock, although as a physician he could comment generally about such impairments, he did not think that his expertise would be particularly helpful when analyzing those conditions. (*Id.*).

In his decision, the ALJ accorded Kwock's testimony "great weight," and incorporated the opinion into plaintiff's RFC, although "in deference to the [plaintiff's]

testimony and longitudinal review [of the record], [the ALJ] incorporated additional limitations" beyond those opined by Kwock. (Tr. 1014). Contrary to plaintiff's contention, the ALJ specifically acknowledged that Kwock is "a board certified medical expert in orthopedics," and he acknowledged that Kwock offered an opinion regarding plaintiff's severe impairments of "cervical, thoracic, and lumbar spine issues, along with morbid obesity and left shoulder disorder." (Tr. 1013-14). I find no error with the ALJ's consideration and weighing of the opinion testimony provided by Kwock.[3]

        Nor do I find that remand is warranted because a portion of Kwock's testimony was inaudible and unable to be transcribed. During the hearing, plaintiff's attorney asked Kwock whether there would "be bad days when [plaintiff] would be capable of less than the [RFC]" to which Kwock had opined. (Tr. 1049-50). Kwock responded that everyone could expect to have good days and bad days, but that he would not "assign a specific number of that type of days or that type of period." (Tr. 1050). Kwock proceeded to explain that plaintiff suffered from symptomatic degenerative changes in several musculoskeletal areas, including her knees. (*Id.*). During Kwock's discussion of plaintiff's knee degeneration, as he was noting that plaintiff's treating orthopedic doctor's treatment notes did not describe the degree of degeneration observed on the x-ray of her knee, the transcript reflects that there was an approximately thirty-six second portion of the recording that was inaudible and unable to be transcribed. (*Id.*). Kwock's transcribed testimony then continued as he explained that plaintiff's degenerative changes were "relatively mild, relatively low-grade in intensity, and probably consistent to some degree with

---

[3] In his decision, the ALJ specifically discussed the record evidence regarding plaintiff's impairments of chronic fatigue, sleep apnea, and anemia and concluded that the impairments were nonsevere. (Tr. 1001-1002). According to the ALJ, plaintiff's anemia resolved with treatment and discontinuance of non-steroidal anti-inflammatory drugs. (*Id.*). Moreover, as plaintiff conceded at the hearing, use of a CPAP machine helped to alleviate her sleep apnea and improve her sleep quality. (*Id.*).

9

[plaintiff's] age of 48." (*Id.*).  Kwock opined that he did not believe that plaintiff's degenerative changes were severe enough to materially interfere with her daily activities, particularly because they could be accommodated in an office setting and treated with analgesics, anti-inflammatory medications, and physical therapy.  (*Id.*).

That the hearing recording contains inaudible portions does not necessarily warrant remand; rather, plaintiff must demonstrate that the "missing portion of the transcript would bolster [plaintiff's] arguments or prevent judicial review."  *Muhammad R. v. Comm'r of Soc. Sec.*, 2024 WL 21546, *2 (W.D.N.Y. 2024) (quoting *Williams v. Barnhart*, 289 F.3d 556, 557-58 (8th Cir. 2002)).  Plaintiff contends that the inaudible portion of Kwock's testimony was "significant because it . . . acknowledg[ed] the possibility that [p]laintiff's RFC may be more limited than [Kwock] originally opined, and that areas of the medical record may have been unclear." (Docket # 7-1 at 22).  Having reviewed the entire hearing transcript, including the context surrounding the inaudible portion of Kwock's testimony, I disagree that the missing testimony would bolster plaintiff's disability claim or that it prevents judicial review of the ALJ's decision.

Although Kwock was responding to plaintiff's attorney's question about "good days and bad days," Kwock had already testified before his testimony became inaudible that he would expect anyone to have good days and bad days and that he would not proffer an estimate as to how frequently that would occur for plaintiff.  (Tr. 1050).  Moreover, the remainder of Kwock's testimony makes clear that, in his opinion, objective imaging of plaintiff's impairments demonstrated mild degeneration consistent with aging.  (*Id.*).  Thus, he concluded that plaintiff's impairments were not likely to significantly interfere with her ability to work in an office setting, so long as she was permitted to treat her symptoms with pain and anti-inflammatory medications,

physical therapy, and activity modifications. (*Id.*). Although the precise content of the missing testimony cannot be exactly determined, the transcript makes clear that Kwock maintained his opinion that plaintiff's impairments did not prevent her from engaging in light work activity with modifications. Accordingly, I find that remand is not warranted. *See Mendez v. Colvin*, 2014 WL 6979043, *9 (S.D.N.Y. 2014) ("[w]hile the transcript has indications of 'inaudible' in a number of places, the [c]ourt's reading of the transcript as a whole reflects that these indications represent brief gaps[;] [t]he transcript makes the opinion of the expert and the basis for his conclusions reasonably clear[;] [t]hus, the problems with the transcription of the medical expert's testimony do not affect our ability to review the record") (brackets omitted); *see also Mireles ex rel S.M.M. v. Comm'r of Soc. Sec.*, 608 F. App'x 397, 399 (6th Cir. 2015) (remand not warranted where despite portions of inaudible recording during medical expert's testimony, expert's opinion was apparent from review of the transcribed portions); *Muhammad R. v. Comm'r of Soc. Sec.*, 2024 WL21546 at *2 ("where there are inaudible portions, those portions are completely understandable from the surrounding context or by the ALJ asking the relevant question a second time, such transcript catches the answer the second time[;] . . . [a]ccordingly, [p]laintiff is not entitled to remand on this basis").

  **B.**  <u>The ALJ's Mental RFC Assessment</u>

  I turn next to plaintiff's contention that the ALJ rejected Vaccaro's opinion concerning plaintiff's mental limitations and therefore improperly formulated the mental RFC determination based upon his own lay interpretation of the medical evidence. (*See* Docket # 7-1 at 23-24). In his decision, the ALJ evaluated an opinion authored by Vaccaro, plaintiff's longtime treating nurse practitioner, and determined that it should be given "limited weight." (Tr. 1015). In her opinion, dated April 27, 2021, Vaccaro reported that she had been treating

plaintiff for ten years and that plaintiff had been diagnosed with chronic pain, degenerative joint disease in multiple joints, myelopathy, and depression. (Tr. 1584-88). As relevant to plaintiff's mental impairments, Vaccaro opined that plaintiff suffered from symptoms of depression and anxiety and that she was unable to tolerate the work stress associated with even a "low stress" job. (*Id.*). Vaccaro also opined that plaintiff's pain symptoms would constantly interfere with her ability to maintain the attention and concentration required for simple work. (*Id.*). In formulating the RFC, the ALJ accounted for plaintiff's mental limitations by restricting her to simple, routine work that involved only simple work-related decisions and only occasional variations in tasks or schedule. (Tr. 1005-1006).

    An ALJ does not necessarily "reject" opinion evidence when the opinion is assessed less than controlling weight and where, as here, it is evident that the ALJ's RFC determination incorporates or accounts for limitations contained in that opinion.[4] *See, e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *3 (W.D.N.Y. 2019) ("[c]ontrary to [claimant's] assertion, the ALJ did not wholly reject [the doctors'] opinions; instead, she

---

[4] Irrespective of the terminology used by the ALJ, whether it be "great weight," "little weight," "some weight," or "no weight," the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence. *Compare Freeman v. Comm'r of Soc. Sec.*, 2019 WL 2016585, *4 (W.D.N.Y. 2019) (RFC not supported by substantial evidence where ALJ gave "little weight" to the only medical opinion of record and failed to account for resting and lifting limitations assessed in the opinion); *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (ALJ's discounting of only medical opinions of record created evidentiary gap in the record; "the ALJ explicitly accorded 'little weight' to the opinions [of the physicians], . . . and nothing suggests that the ALJ accounted for the limitations identified by these physicians in formulating the RFC"); *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records"); *with Burch v. Comm'r of Soc. Sec.*, 2019 WL 922912, *6 (W.D.N.Y. 2019) ("[a]lthough the ALJ accorded limited weight to both opinions, her RFC assessment nonetheless accounts for the majority of the limitations assessed by both doctors"); *Harrington v. Colvin*, 2015 WL 790756, *17 (W.D.N.Y. 2015) (same); *Crawford v. Astrue*, 2014 WL 4829544, *21 (W.D.N.Y. 2014) ("the ALJ's RFC assessment adopted the limitations assessed by [the physician] that were supported by the evidence and . . . his decision to afford [the physician] limited weight did not create a gap in the record").

afforded them 'partial' and 'some' weight and . . . relied on portions of them to determine [claimant's] RFC[;] . . . [j]ust because the ALJ did not afford either [doctor's] opinion controlling weight does not mean that she substituted her own view of the medical evidence for those opinions"); *see also Harris v. Berryhill*, 2017 WL 4112022, *3 (W.D.N.Y. 2017) ("[p]laintiff contends that the ALJ improperly 'rejected' [doctors'] opinions [which the ALJ afforded 'less than significant weight'] without citing to another medical opinion[;] [p]laintiff overstates the ALJ's actions[;] [t]he ALJ did not 'reject' these opinions[;] [t]o the contrary, he gave them some weight and incorporated certain of the limitations set forth therein into his RFC finding"); *Bockeno v. Comm'r of Soc. Sec.*, 2015 WL 5512348, *5 (N.D.N.Y. 2015) ("the ALJ did not outright reject [doctor's] opinion, but afforded his opinion 'little weight'[;] [t]he ALJ's RFC determination includes non-exertional mental limitations, some of which are consistent with the limitations imposed by [doctor] and supported by other medical evidence in the record"). Here, the ALJ did not completely reject Vaccaro's medical opinion; rather, he accounted for the stress-related limitations identified by Vaccaro by limiting plaintiff to simple work involving limited decision-making and little variation in work-related tasks. *See Martin v. Saul*, 2020 WL 5096057, *5 (W.D.N.Y. 2020) (ALJ accounted for marked limitations managing stress by limiting plaintiff to low stress work involving simple decisions, no production rate pace, few workplace changes, and only occasional contact with others); *Rice v. Comm'r of Soc. Sec.*, 2020 WL 4283894, *4 (W.D.N.Y. 2020) (ALJ accounted for moderate-to-marked limitations appropriately dealing with stress by limiting plaintiff to simple work in a low stress environment involving simple routine decisions, occasional contact with others, and no production-rate pace); *Blocker v. Saul*, 2020 WL 1047737, *6 (W.D.N.Y. 2020) ("the ALJ accounted for [p]laintiff's stress limitations by incorporating into [p]laintiff's RFC limitations to 'simple routine tasks,'

'occasional interaction with coworkers and the general public,' and 'low stress work defined as work involving only occasional decision making'[;] . . . [s]uch limitations have routinely been found to adequately account for a marked limitation in dealing with stress"); *Swanson v. Comm'r of Soc. Sec.*, 2020 WL 362928, *4 (W.D.N.Y. 2020) ("the RFC limits [p]laintiff to work in a 'low-stress environment, which is defined as an environment with no supervisory duties, no independent decision-making required, no strict production quotas and minimal changes in work routine and processes'[;] . . . [t]his limitation adequately accounts for [consultant opinion] that [p]laintiff was markedly limited in dealing with stress"); *Uplinger v. Berryhill*, 2019 WL 4673437, *7 (W.D.N.Y. 2019) ("the ALJ appropriately incorporated marked limitations in dealing with stress . . . into plaintiff's RFC by limiting plaintiff to work in a low stress work environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes and limiting her to frequent interaction with supervisors and occasional interaction with coworkers and the general public").

   Moreover, I conclude that the ALJ's RFC assessment was supported by substantial evidence. Plaintiff testified that she was unable to work primarily due to her physical impairments. (Tr. 1054-69). Indeed, when asked whether she had any difficulty maintaining concentration or focus, plaintiff testified, "I'm pretty good with focusing[.] . . . I'm usually pretty good with, like, concentration, things like that." (Tr. 1063). Further, plaintiff reported that she had no difficulty getting along with others, paying attention, remembering things, completing tasks, or following written or spoken instructions. (Tr. 174-76).

   The record reflects that although plaintiff sought treatment for depression beginning in January 2016 after screening positive for depression during a visit with her primary

care provider, she was discharged from treatment in January 2017, after approximately twelve counseling sessions. (Tr. 774-833). Plaintiff's treatment notes indicate that the medication she was prescribed to address her depression was effective in controlling her symptoms, and her mental status examinations were generally normal. (*Id.*). Plaintiff was discharged from treatment because she demonstrated consistent maintenance of her "mild depressive [symptoms]." (Tr. 774). At the time, plaintiff reported that she had been doing "really good[,] depression-wise." (*Id.*). Thereafter, plaintiff routinely screened negative for depression during her primary care visits. (Tr. 753, 762, 772, 1479, 1495). Accordingly, I find that the ALJ's mental RFC determination is supported by substantial evidence and is not the product of the ALJ's own lay interpretation of the medical evidence. Therefore, I find that remand is not warranted on this basis.

## CONCLUSION

Upon review of the record, this Court finds that the Commissioner's denial of DIB/SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                  *s/Marian W. Payson*
                                                  MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated: Rochester, New York
       March 18, 2024